Good morning, your honors. May it please the court, my name is Tiffany Lin and I will be arguing on behalf of appellant David Edwards. I'd like to reserve five minutes for rebuttal. All right, why don't you talk. This appeal presents one main question. Does a modified program imposed on inmates of only one race, solely on the basis of their race, violate the answer which has already been considered by this court and affirmed and well-established precedent is yes. Upon de novo review, this court should reverse the district court's summary judgment ruling and remand. I will concentrate my remarks this morning on the equal protection violation. First, I'll briefly touch on the case law forming the backdrop of the events in this case. Second, I'll briefly touch on the events that occurred here. And finally, if there's time, I will briefly touch on the other constitutional violations that occurred. I'd like to ask you a question. The incidents at issue involved two modified programs, one that occurred in July 2010 and second in February 2011. The state argues that your client did not exhaust his administrative remedies with respect to the second modified program from February 2011. And I'm a little confused by your argument with respect to the California reg that doesn't allow duplicative grievances. Is your argument that that regulation excuses exhaustion or does it mean or is your argument that in light of that regulation, he did exhaust his remedies for the second program or both or something different? Yes, your honor. So my argument is that in light of the regulation and also due to the not be exhausted if they're effectively unavailable, he did not fail to exhaust his administrative remedies. But if he did, that exhaustion, that failure to exhaust was excused because the remedies were effectively unavailable. So how would we reach the conclusion that the remedies were effectively unavailable rather than that it would be futile for him to I don't think that the court needs to create a futility exception to the administrative exhaustion requirement. I guess my argument is more two pronged. First, he did actually exhaust because he supplemented his previous administrative appeal. And he also did exhaust because he filed an administrative appeal of the challenging the same policy. So he was not required to file a second. But secondly, even if he was required to file a second appeal, that exhaustion would be excused due to the effective unavailability exception. And why is it effectively unavailable? Your honor, so the district courts in California have held that if the prisoner has already decision on their administrative appeal challenging the same policy that that the prisoner has been put essentially on notice that the remedy is no longer available because he was challenging the exact same policy that he would have been required to challenge again. So a denial of the third level review for a policy challenge would render the any further appeal effectively unavailable. When you started your remarks, you said there was one issue, and you focused on equal protection. In your briefing, of course, you raised your clients other claims. You're not I don't want to misunderstand what you're saying. You're not waiving claims. No, your honor. I'm sorry. Go ahead. Thank you, your honor. So returning to equal protection violations. So in 2005, the United States Supreme Court addressed the use of racial classifications in prisons in Johnson versus California. Though the government in Johnson argued for a more deferential standard of review, the Supreme Court declined and held that strict scrutiny applies to race based classifications, even in prisons. The Supreme Court explained that race discrimination is especially pernicious in the administration of at its apex, searching judicial review of racial classifications is necessary to guard against invidious discrimination. Why didn't the the lockdown and the modified program pass strict scrutiny in this case? Yes, your honor. So the Supreme Court in Johnson versus California and this court, in a subsequent case in Richardson versus Reynolds, held that it did not pass strict scrutiny for a prison to impose a modified program on inmates of an entire race due to isolated incidents involving one or a few inmates of that race, which is exactly what occurred in this case. There is no evidence in the record that the programs were that the incidents were race based or constitute a race riot or anything involving more than one or a few prisoners and such. Locking down all prisoners of that same race in response to these incidents was not narrowly tailored. So did the did Edwards propose what a less restrictive alternative would be? Yes, your honor. So in the in the Solano County Superior Court case that was issued a year before the events here in Reed Tucker, the court had actually proposed that instead of having lockdowns of all inmates of one race following incidents, you know, isolated incidents involving inmates of that race, and the court could instead lock down all inmates while the investigation was occurring and then release the inmates on an individualized thesis due to the fact that the inmate of that race, Mr. Edwards, is not affiliated with any gang or has no history of violence in the prison and it would have been appropriate to release him on an individualized thesis. Did he raise that theory to the district court in the federal case? I don't believe that Mr. Edwards had proposed an individualized release policy. However, CSP Solano, the prison in this case, had already been ordered to implement that individualized policy through in Reed Tucker. So is it your position that CSP Solano was in violation of the California court order that had been issued against him? Yes, your honor. I think that is correct. Although I don't think that the court needs to reach that conclusion in order to rule Mr. Edwards favor in this case. So what would you have us do with respect to the equal protection claim? Your honor, I think it as to the equal protection claim and also the other constitutional claims, I think on the record in this case, granting summary judgment was not appropriate. At the very least, there was a genuine dispute of material fact whether the modified programs in this case violated Mr. Edwards' constitutional rights. And so I would ask this court to reverse the district court's grant of summary judgment and remand for a trial on these claims. Okay. Are you saying there was a general, a genuine issue of material fact? What was the factual issue that was in dispute? As to the equal protection claim, your honor, I think that the factual issue was whether the modified programs in this case were narrowly tailored. So that's the legal issue, correct? Isn't that a legal issue? I believe that issue requires factual determinations of the events that occurred in this case and whether it was appropriate to impose a lockdown of all inmates of one race based on the actions of one or a few. So the factual questions would be whether there was evidence in the record showing that incidents were race-based, thereby justifying a lockdown. So there was a dispute over whether the, there was a factual dispute over whether the incident was race-based. Is that the issue of material fact? Yes, your honor. Yes. And I believe once the jury or the fact finder has a chance to determine that issue, the jury can then determine whether it was reasonable for, you know, whether there was another less restrictive alternative. Was that raised to the district court, the argument that the incident was not race-based? Yes, your honor, it was. Is your position on whether the restrictions were sufficiently narrowly tailored change if we are considering only the first modified program and a duration of 33 days? No, your honor. I don't believe that there was any indication of the first incident was race-based either. There was evidence in the record that the first incident could have been gang-based. The two perpetrators were found to be white skinheads and members of that gang. However, the prison essentially assumed that all white inmates were part of the gang, just due to basis of the color of their skin. And that response is not narrowly tailored and is in fact what the Supreme Court warned against doing in Johnson versus California. As I recall, the prison modified the restrictions over the period of the modified program. So over 33 days, they were changing and reducing the restrictions. Why doesn't that show that the reaction was narrowly tailored? Your honor, the prison modified the restriction as to the non-white inmates in terms of the violations that I'm discussing here, such as the denial of outdoor exercise. White inmates were denied outdoor exercise for the full duration and non-white inmates were released after a couple days. As to the other restrictions I believe your honor is referring to, such as access to the law library or the dining hall, it's correct that those restrictions were lifted gradually as to the white inmates as well. However, those restrictions do not form the basis of the constitutional violations that we're alleging here. Counsel, did you want to save some time for rebuttal? Yes, if there are no further questions, I will reserve the remaining time for rebuttal. All right, thank you, counsel. Ms. Ehlenbach? Good morning, your honors. May it please the court, my name is Martha Ehlenbach. I'm the California Deputy Attorney General and I represent defendant Warden Swarthout. This court should affirm the grant of summary judgment for Warden Swarthout because Mr. Edwards' claims are barred by claim preclusion. And on the merits, the 2010 and 2011 modified programs challenged here did not violate Mr. Edwards' constitutional rights. They were a tailored response to two separate incidents of violence at the prison. And finally, Mr. Edwards did not exhaust administrative remedies with respect to the 2011 modified program. I'd like to talk about claim preclusion first. Mr. Edwards previously raised his claims regarding these programs in state court. The Superior Court sustained the defendant's demur without leave to amend and the Court of Appeal affirmed that decision. There's no dispute here that the two suits involved the same claims and that the state court decision resulted in a final judgment on the merits. Counsel, did you base this issue to the district court? No, your honor, although the state court documents were in the record. But this court should exercise its discretion to consider claim preclusion here because it has been fully briefed. It is an issue of law and applying it here would allow this court to give full effect to the state court judgment. So it is appropriate to consider. In the briefing, the only cases that Mr. Edwards raised that distinguished privity in the claim preclusion context in terms of individual and official capacity defendants involved application of federal claim preclusion law, not California law. And the case that they cite applying California law, which needs to be applied here, actually supports a finding of privity. That case is Furness v. Gerbino. And in that case, this court held that the parties in a federal civil rights lawsuit were in privity with the parties in the previous habeas action, including one individual from the Department of Corrections who was not sued in the original case because he was in fact an a supervisory employee. He had a relationship with the other parties in the prior lawsuit such that there was a shared community of interest. And the same thing is true here. When Worden Swarthout was sued in his official capacity, he stepped into the shoes of the state. And in his individual capacity, he does have the same interests. I'd next like to talk about exhaustion. Mr. Edwards raised the issue of whether or not a later grievance would have been duplicative. And it would not have been. Mr. Edwards' grievance regarding the 2010 program was specific to that program. He explained why in his view, the modified program should not have applied to him and why he was not involved in the incident with the white skinheads. And again, according to him, and he asked that he not be subject to that program. So he was talking very specifically about what the prison had just done. And the prison responded in kind, discussing the specifics of that modified program, explaining why it applied to him and explaining that each individual program has its own dynamics. So the prison was not afforded the opportunity to do that with respect to the 2011 modified program. It never had the chance to review a grievance regarding that program or evaluate Mr. Edwards' specific concerns there. And there's no evidence in the record to show that a new grievance would have been futile. Each grievance is limited to one single issue, but there's no evidence in the record showing that an individual reviewing a new grievance would have viewed it as duplicative of a previous grievance about a different modified program. So, Ms. Ellenbach, in the prison's response to the grievance related to the first modified program, there was a statement that said, where there's an incident involving any race, all inmates of that race are locked up. And then that was later revised. But as I understand the timing of this, the incident and the modified program began in July 2010. The initial statement was February 2011, and then the modification was March 2012, so a year later. Why isn't that sufficient factual dispute to defeat summary judgment on your unequal protection claim? Well, first of all, the fact that that grievance response was amended shows that it was a misstatement. And even in the original grievance response, it doesn't look like it. Well, why does it show it's a misstatement as opposed to just a change in the policy? Is there evidence that the first statement was an error? It was an error. The reason there was an amendment, I think it can be drawn from the record. It's reasonable to conclude that the second grievance was correcting that error. And we actually see in the original grievance, there was also a statement saying that each individual incident is evaluated on its own merits, which contradicted that misstatement in the original grievance itself. At summary judgment, we have to do these facts in the light most favorable to the non-movement. And you're suggesting that we draw inferences from these statements. Couldn't a reasonable jury draw a different inference and conclude that this was a race-based decision, that all inmates of a race are locked up when there's an incident? No, Your Honor. The other evidence we have in the record is Warden Swarthout's declaration, which addresses the fact that there are other factors that were considered at the time, in addition to race. Initially, these modified programs did not apply to an inmate of a particular race. It was inmates on a particular facility. And there was also evidence that at least raised the question as to whether or not these were race-based incidents. So considering those, the officials determined that it was appropriate to continue these modified programs and continue their investigation, especially since they did not know who was involved. They didn't know the extent or the likelihood of future violence. And they were working to restore privileges for everybody throughout these two 30-day periods. In fact, the second investigation revealed that there were two additional assailants when an inmate had been attacked with a slashing weapon. So the fact that they were acting proactively and that these modified programs were limited in duration and limited in terms of the privileges that were not allowed at the time, does show narrow tailoring. The Richardson case seems like it's similar, factually. And the court made some fairly strong statements about race-based determinations in this context, recognizing, of course, that the prison officials have legitimate and serious security concerns. But how do you distinguish Richardson to argue that what happened here, the restrictions here, were narrowly tailored to Yes, Your Honor. This case is different from Richardson in several different ways. First of all, the length of the modified program is quite different. Here, these two modified programs lasted for about a month. In Richardson, it was over eight months of intermittent modified programs that the inmates experienced. Second of all, in Richardson, the court indicated that there was no evidentiary basis for the prison officials to have believed that this incident was race-based. Here, even Mr. Edwards testified he understood that things are done in prison because of race and because of racial pressures. Even beyond gang membership, individuals who are in a gang or disruptive group can then pressure other inmates to commit violent acts or to otherwise disrupt prison security. And he testified to that in his deposition. Was there evidence in this case that the incident, I think the wording Richardson used, was showing linkage between the incident and racial animosity. The declaration by the warden, as I read it, was much more general and just said, well, we worry about that sort of thing, as opposed to identifying any specific evidence. Was there evidence in the record? Yes. In the first incident, a black officer was attacked by two white inmates who are members of the disruptive group, the White Skinheads. And Warden Swarthout testified that he couldn't be sure, and officials couldn't be sure, whether or not... Not being sure is not evidence. Was there any evidence? I think that is evidence in itself, Your Honor. And there was reason to believe that it was race-based, and there was a need to do more investigation to determine whether or not there were additional people involved and there was additional violence planned. I think this case would have different facts if the modified program had lasted longer, significantly longer, perhaps, or if there were different facts in the record about what officials were doing during the 30-day periods to restore privileges. But the record here is we're working to restore privileges for everyone. And if this court is to find that there's a close constitutional question, then it should find that Warden Swarthout is entitled to qualified immunity from the Equal Protection Claims, because the law was not so clear that the modified programs at issue here would have violated Mr. Edwards' constitutional rights. In fact, in Johnson versus... Counsel, wasn't the prison under a state court order not to do this race-based programs? The prison... The state court order that Your Honor is referring to was not so broad. It specifically addressed a policy that was in effect in, I believe, 2007. And in that order, the state court declined to address the prison's current policy, recognizing that it had changed and that it was more individualized. So, no, N. Ray Tucker is not dispositive of qualified immunity here. And Johnson versus California is not either, because in that case... Did you raise a qualified immunity below? Yes, Your Honor. Did the court address it? No, the court did not address it, because the court determined that there was no constitutional violation and that there was therefore no need to address the qualified immunity argument. But this court can still address that issue. And it should, in that case, again, because the law was not so clear that Warden Swartzout would have been on notice that these programs were unconstitutional. Johnson versus California... I'm sorry, can I ask you to circle back just for a moment? Is there any evidence in the record that links Mr. Edwards to the violent incident, the first one, other than his race? Was there any reason why he was subjected to restrictions other than his race? There is no evidence that he was connected to those incidents, no, Your Honor. But again, the prison needed to interview a large number of inmates to determine who might have been involved. And right now, today, the technology that the prison would have to do that with electronic records would be somewhat different. But the process in 2010 would have involved looking at paper files. It did involve interviews with large numbers of inmates. And it was through that process where they did in fact identify individual assailants that they made the determination of who could or could not have been involved. Even though Edwards can't assert, may not be able to assert a claim based on the February 2011 incident, doesn't the fact that that incident occurred undermine your position that the same kind of race-based classification for one of these programs was implemented just, I don't know, maybe six months later? I'm sorry, Your Honor. I'm not quite sure I understand your question. Isn't the fact that the prison did the exact same thing six months later, doesn't that come into evidence as as showing that they continue despite Richardson and Johnson to, that the prison continues to engage in programs based on racial classifications? No, Your Honor. What the evidence does show in that is in that in each of these instances, the prison officials did make an individualized determination regarding the nature of the incidents and regarding the need for further investigation and for limited modified programs there. So that's what the evidence shows. That's what Warden Swirthout testified to. And those facts are not really disputed here. And Mr. Edwards did not dispute the fact that the prison had concerns about the extent of the violence here and the nature of the violence. So again, for those reasons, it would be appropriate to find that there's no constitutional violation. And courts have recognized that this is an area where it is appropriate to afford deference to prison officials in their determinations, security-based determinations. And the prisons can be dangerous places, as Johnson versus California said. And Johnson did recognize that there can be circumstances where there might be need for racial classifications. I see my time is almost up. Unless there are any further questions, this court should affirm the grant of summary judgment for Warden Swirthout. Thank you. Thank you. Ms. Lin? Thank you, Your Honor. I will touch on three issues raised by my colleague in rebuttal. First, claim preclusion. Second, qualifying immunity. And finally, the equal protection violation. So first, with claim preclusion, the Attorney General argues that Furness versus Girobino stands for the proposition that Warden Swirthout is in privity with himself and his prior suit was against him in his official capacity. Furness versus Girobino does not stand for that proposition. Furness involved a suit against the officials and the government in their official capacity. And so, as the Attorney General was stating, when the second suit sought to bring in another party who was not sued in the first suit, the court found privity because that party was sued in his official capacity. The same interests are not represented here, where Warden Swirthout was previously sued in his official capacity, but here is being sued as an individual. As an individual, he is subjected to damages, and the question is whether his individual conduct was outside the scope of what he was authorized to do. And those are very different interests. Second, with qualified immunity, Enri Tucker is definitely controlling here on the equal protection issue. The court in Enri Tucker, although it did not have a chance to opine on what the policy was like after 2007, the court warned that should C.S.P. Solano continue to implement lockdowns solely on the basis of race, that would violate the equal protection clause. And here, there is, at the very least, a dispute of material fact whether the same policy continued to be applied. I think Your Honor is bringing up a really good point with the third level decision from Mr. Edwards' first administrative appeal, where CDCR stated, when there is an incident involving any race, all inmates of that race are locked up. At the very least, there is a dispute of material fact whether that policy was being employed, and that overly broad and not narrowly tailored policy was still being employed at the time of the incidents in question. Finally, there is a dispute of fact as to whether the prison had been considering any other factors besides race when they implemented the modified programs, whether they considered any alternatives, or whether this was the least restrictive alternative, and for that reason, the case is inappropriate for summary judgment. If there are no further questions, I will submit. Thank you very much for your time. Thank you very much, and Ms. Lin, thank you and your law firm, Walking Park and Gallagher, for representing Mr. Edwards pro bono before us today. Thank both counsel for their argument and Edwards versus Sport Out will be submitted.
judges: WARDLAW, IKUTA, BADE